IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BLAIR J. LARSEN,<br><br>                         Plaintiff,<br><br>         v.<br><br>CAROLYN W. COLVIN,<br><br>                         Defendant. | **ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION**<br><br>Case No.  2:13-cv-00176<br><br>Judge Clark Waddoups |

This case arises out of Plaintiff Blair J. Larsen's appeal of the decision of the Acting Commissioner of Social Security (the Commissioner), which found him to be disabled beginning on September 4, 2011, but denied him disability benefits before that date. (Dkt. 29, p. 1). The case was assigned to United States District Court Judge Clark Waddoups, who then referred it to United States Magistrate Brooke C. Wells pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. No. 17). Judge Wells recommended the court affirm the decision of the Commissioner in its entirety. (Dkt. 29). For the reasons that follow, the court APPROVES and ADOPTS the Report and Recommendation in part, and REJECTS it in part.

## BACKGROUND

Mr. Larsen applied for disability benefits, alleging that he became disabled on June 8, 2009 due to injuries to his left arm, chronic back pain, and problems with gout. (Dkt. No. 29, p. 4). Although Mr. Larsen's application was initially denied, Mr. Larsen requested and received an administrative hearing before an administrative law judge (ALJ) in October 2011. (*Id.*, p. 2).

In support of his disability claim, Mr. Larsen submitted three opinions from Dr. Joseph L. Richey, his treating physician. The first was a form dated June 24, 2010, which reflected that Dr. Richey diagnosed Mr. Larsen with degenerative lumbar disc disease, characterized Mr. Larsen's pain as moderately severe, and concluded that Mr. Larsen could not be expected to be reliable in attending an eight-hour workday and could be expected to miss eight days of work per month. (Tr., p. 357–60). In a subsequent November 2010 report, Dr. Richey recommended that Mr. Larsen refrain from lifting more than twenty pounds,[1] and in a May 2011 report, Dr. Richey stated that lifting more than ten pounds increased Mr. Larsen's lumbar discomfort. (*Id.*, p. 396, 401–02). Dr. Richey also opined in the May 2011 report  that Mr. Larsen had "failed conservative care in the form of physical therapy, activity modification, exercise, rest, massage, chiropractic care, anti[-]inflammatory medications and narcotics." (*Id.*, p. 401). Dr. Richey thus concluded that Mr. Larsen "has a function capacity disability and will never make it back in to the competitive workforce," and deemed him functionally disabled. (*Id.*).

In contrast, Consultative Examiner Dr. Justin R. Johnsen reached a different conclusion. In an October 2010 physical consultative examination, Dr. Johnsen diagnosed Mr. Larsen with only gout and arthritis. In Dr. Johnsen's opinion, these conditions would only slightly limit Mr. Larsen's ability to lift heavy objects, bend repetitively, walk long distances, or do strenuous activity. (*Id.*, p. 373). Accordingly, Dr. Johnsen concluded Mr. Larsen could perform "most mild or moderate activities." (*Id.*).

In considering these competing medical opinions, the ALJ gave great weight to Dr. Johnsen's opinion, despite the fact that Dr. Johnson had not treated Mr. Larsen. The ALJ reasoned that Dr. Johnsen is an expert in his respective field and his opinion was consistent with the medical evidence of record. (*Id.*, p. 19). The ALJ also expressly considered Dr. Richey's

---

[1] Dr. Richey and PA-C Jordan L. Mecham cosigned the November 2010 opinion. (Tr., p. 17–19).

November 2010 and May 2011 opinions, which reflected that by May 2011, Mr. Larsen could

not lift more than ten pounds and was functionally disabled. But although the ALJ agreed that

Mr. Larsen could not lift more than ten pounds, the judge determined that the "objective

evidence, as discussed elsewhere in this decision, did not support Dr. Richey's conclusion that

Mr. Larsen was functionally disabled to the point that he is unemployable in all kinds of jobs."

(*Id.*). The ALJ therefore gave Dr. Richey's opinions "little weight." (*Id.*) The ALJ did not

expressly consider Dr. Richey's June 24, 2010 opinion that Mr. Larsen could be expected to be

absent eight days per month, despite the fact that a vocational expert (VE) testified that even

three to four absences per month would preclude work activity. (*Id.*, p. 50–51).[2] The ALJ did not

address the weight to be given to Dr. Richey as Mr. Larsen's treating physician.

      Ultimately, the ALJ found that Mr. Larsen had severe impairments of gout, a left rotator

cuff tear, a left bicep tear, and degenerative disk disease of the lumbar spine. (*Id.*, p. 13).

Nevertheless, the ALJ determined that prior to September 4, 2011, Mr. Larsen retained the

residual function capacity (RCF) to perform the full range of light, unskilled work, subject to

certain limitations. (*Id.*, p. 14). And, relying on testimony from the VE, the ALJ concluded that

there were available jobs in the economy that Mr. Larsen could perform prior to

September 4, 2011. The ALJ therefore denied Mr. Larsen disability benefits prior to that date.

      After the Appeals Council affirmed the ALJ's decision, Mr. Larsen appealed the partial

denial of benefits in the United States District Court for the District of Utah. He raised four

issues on appeal: 1) that the ALJ erred in assigning great weight to the opinion of Dr. Johnsen,

who failed to consider Mr. Larsen's primary disabling impairment: lumbar disc disease; 2) the

ALJ improperly found Mr. Larsen could perform a job as a laundry aide, which does not exist in

---

[2] It appears that ALJ may not have considered the June 24, 2010 opinion to be from a treating physician. (*See* Tr., p. 19).

the occupational titles; 3) that the ALJ erred by failing to consider cervical disc disease among

Mr. Larsen's severe impairments; and 4) that the ALJ improperly rejected Dr. Richey's June

24, 2010 opinion. (Dkt. No. 29, p. 5). After considering all four arguments, Judge Wells

recommended this court affirm the Commissioner's decision in its entirety. (*Id.*, p. 9).

## DISCUSSION

Mr. Larsen has not objected to the Report and Recommendation. Nevertheless, the court

has an independent obligation to consider it before approving or adopting it. Thus, reviewing

Judge Wells's Report and Recommendation for clear error, *see Summers v. State of Utah*, 927

F.2d 1165, 1167 (10th Cir. 1991) (holding that in the absence of timely objection, the district

court may review a magistrate's report under any standard it deems appropriate); *Anderson v.

Herbert*, No. 2:13-CV-211, 2014 WL 6769907, at *1 (D. Utah Dec. 1, 2014) ("In the absence of

objection, this court may review a magistrate judge's decision under a 'clear error' standard."),

the court perceives of no error in Judge Wells's thorough and thoughtful resolution of

Mr. Larsen's first three arguments. Therefore, it approves and adopts the Report and

Recommendation with respect to those issues. But the court finds Mr. Larsen's fourth

argument—that the ALJ improperly omitted Dr. Richey's opinion that Mr. Larsen was unable to

work eight days out of the month—has merit.

Although an ALJ is not required to discuss every piece of evidence, the record must

demonstrate he or she considered all of the evidence. *Mays v. Colvin*, 739 F.3d 569, 576 (10th

Cir. 2014). And an ALJ is required to consider all the medical opinions in the record and discuss

the weight he or she assigns to such opinions. *Id.* at 578. Where, as here, a medical opinion

comes from a treating physician, the regulations impose on an ALJ additional burdens. First, the

ALJ must determine whether to give the treating physician's opinion controlling weight. *Watkins*

*v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *see Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2013) (recognizing that a treating physician's opinion is given particular weight because a "medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records"). This requires the ALJ to consider "whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with other substantial evidence in the record. If so, the ALJ must give the opinion "controlling weight." *Id.*

   If the opinion is not entitled to controlling weight, the ALJ should next determine how much weight to give the opinion, considering various factors. *See id.* at 1301 (explaining that relevant factors include "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."). In conducting this analysis, an ALJ must give "good reasons in the notice of determination or decision" for the weight he or she ultimately assigns and be "sufficiently specific" to permit meaningful appellate review. *Id.* (citations omitted).

   In this case, the Commissioner concedes that the ALJ failed to expressly consider Dr. Richey's June 24, 2010 opinion that Mr. Larsen could be expected to miss eight days of work per month. Nevertheless, the Commissioner asserts the omission is harmless because the court

can infer from the ALJ's rejection of Dr. Richey's May 2011 opinion that he would have similarly assigned the June 24, 2010 opinion little weight. The court disagrees.

In determining that Dr. Richey's opinions were entitled to little weight, the ALJ stated that "the objective evidence . . . does not support [Dr. Richey's May 2011 opinion] that [Mr. Larsen] is functionally disabled to the point is in unemployable in all kinds of jobs." (Tr., p. 19). Even assuming this statement is sufficiently specific to discredit Dr. Richey's May 2011 opinion,[3] it tells the court nothing about whether Dr. Richey's opinion—that Mr. Larsen would have to miss eight days of work per month—is supported by medically acceptable diagnostic techniques and consistent with other substantial evidence in the record. Nor does it provide sufficiently specific information regarding what weight would be appropriate if the opinion were not controlling. In the absence of any meaningful discussion from the ALJ in this respect, the court is left to guess what weight the ALJ would have assigned the opinion if he had considered it.[4] This uncertainly prevents the court from concluding that the ALJ's failure to consider the opinion was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that harmless-error analysis is appropriate where the court can "*confidently say* that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in another way"); *cf. Lately v. Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014) (affirming an ALJ

---

[3] Mr. Larsen does not challenge the court's decision to give Dr. Richey's May 2011 opinion little weight. Accordingly, we do consider this issue further. *See Berna v. Chater*, 101 F.3d 631, 632–33 (10th Cir. 1996) (recognizing that parties may waive consideration of issues by failing to present them to the magistrate judge).

[4] It is not this court's role to undertake the task of delving through the record to evaluate in the first instance whether Dr. Richey's opinion is entitled to controlling weight or some lesser degree of deference. *See Haga v. Astrue*, 482 F.3d 1205, 1207–1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *see, e.g.*, *Watkins*, 350 F.3d at 1300 (remanding where the ALJ offered no explanation for the weight, if any, he gave to the opinion of a treating physician, because the court of appeals could not "properly review the ALJ's decision without these necessary findings"); *Drapeau v. Massanari*, 255 F.3d 1211, 1213–14 (10th Cir. 2001) (reversing decision of ALJ that failed to discuss the treating physician's report and did not give any reason for giving greater weight to the opinion of a consulting physician than to a treating physician, and rejecting the government's argument that the treating physician's opinion was contradicted by the testimony of other non-treating physicians).

decision that failed to discuss one doctor's opinion because the court could ascertain from the ALJ's rejection of another doctor's "nearly identical" opinion that the ALJ gave no weight to the opinion, because both opinions addressed the issue of disability (which is reserved to the Commissioner), and were internally inconsistent).[5]

Likewise, the nature of the June 24, 2010 opinion counsels against a finding that the ALJ's error in failing to consider it was harmless. The Tenth Circuit has held that "an ALJ's failure to weigh a medical opinion . . . [is] harmless error if there is no inconsistency between the opinion and the ALJ's assessment of [RFC]." *Mays*, 739 F.3d at 578–79. In such a case, "the claimant is not prejudiced because giving greater weight to the opinion would not have helped [him]." *Id.* at 579 (internal quotation marks and brackets omitted); *accord Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (determining that the failure to expressly weigh a consultative-examination report was harmless where the RFC was generally consistent with an examiner's and doctor's findings, and where it differed, it was more favorable to the claimant). Here, the ALJ's failure to consider the June 24, 2010 opinion was prejudicial because if the opinion were entitled to controlling weight, the result of the proceeding would have been different. If Dr. Richey's opinion that Mr. Larsen could be expected to be absent eight days per month were controlling, it would compel a finding of disability prior to September 4, 2011. The VE testified that three to four absences in a month would prohibit work entirely. Therefore, the court concludes that the ALJ's failure to consider and weigh Dr. Richey's June 24, 2010 opinion was not harmless error in these circumstances. Remand is necessary so that the ALJ can properly weigh Dr. Richey's June 24, 2010 opinion in the first instance.

---

[5] To the extent the Ninth Circuit's unpublished decision in *Zettelmier v. Astrue*, 387 F. App'x 729, 731–32 (9th Cir. 2010) is persuasive, the case is distinguishable. Unlike *Zettelmier*, the Commissioner here has identified no internal inconsistency in Dr. Richey's June 24, 2010 opinion that would permit the court to confidently conclude that no reasonable factfinder would assign the opinion controlling weight.

## CONCLUSION

For the foregoing reasons, the court APPROVES and ADOPTS in part and REJECTS in part the Report and Recommendation. The decision of the Commissioner is AFFIRMED in part, REVERSED in part, and REMANDED.

SO ORDERED this 31st day of August, 2015.

BY THE COURT:

Clark Waddoups
United States District Judge